**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**DENISE SELF,**

**Plaintiff,**

**v.** **CASE NO:**

**ONE TOUCH DIRECT, LLC,**

**Defendant.**
_______________________________________/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, DENISE SELF, (hereinafter "Plaintiff" or "Ms. Self"), a Florida resident, by and through the undersigned counsel, hereby sues Defendant, ONE TOUCH DIRECT, LLC (hereinafter "Defendant," or "OTD") and alleges:

## INTRODUCTION

1. The Plaintiff brings this action against Defendant, her former employer, seeking to recover damages for unlawful discrimination based on age and sex/gender, as well as retaliation, in violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 et seq. ("ADEA"); Title VII of the Civil Rights Act of 1964, as amended, 42

U.S.C. § 2000e et seq. ("Title VII") and its implementing Regulations; and Chapter 760 of the Florida Statutes, the Florida Civil Rights Act of 1992, as amended, § 760.10 et seq. ("FCRA").

2. As further set forth below, Plaintiff alleges that Defendant unlawfully discriminated against her, altered the terms, conditions, and privileges of her employment because of her age and sex/gender, denied her equal training and advancement opportunities, and retaliated against her for complaining of discriminatory treatment, culminating in her unlawful termination, all in violation of her rights under the ADEA, Title VII, and the FCRA.

3. As a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered actual damages including, but not limited to: loss of income, loss of opportunity for future income, loss of benefits, unpaid wages and commissions, and loss of future pay increases. In addition, she has suffered and continues to suffer the loss of her professional and personal reputation, emotional distress, mental anguish, embarrassment, and humiliation.

4. Plaintiff has incurred costs and attorney's fees in bringing this matter.

## JURISDICTION AND VENUE

5. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1343, 42 U.S.C. § 2000e-5, and 29 U.S.C. § 626. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) and the principles of pendent jurisdiction.

6. This Court has jurisdiction to grant declaratory relief, declare the rights and legal relations of the parties, and order further relief pursuant to 28 U.S.C. §§ 2201 and 2202.

7. Venue is proper in the United States District Court for the Middle District of Florida, Tampa Division, pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims herein occurred within this District and Division and pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices out of which Plaintiff's claims herein arise were committed within this District and Division. All facts and circumstances arising from this dispute took place in Hillsborough County, Florida.

## PARTIES

8. Plaintiff is a fifty-five-year-old female.

9. Plaintiff is a member of a class protected against discrimination

and retaliation based on her age and sex/gender under the ADEA, Title VII, and the FCRA.

10. During the period from October 6, 2025, until November 11, 2025, Defendant employed Plaintiff as a Sales Associate/Telephone Sales Representative assigned to the Verizon Wireless Business program.

11. At all times material herein, Plaintiff met the definitions of "employee" and "eligible employee" under all applicable federal and state statutes.

12. At all times material herein, Plaintiff was an employee entitled to protection as defined by the ADEA, Title VII, and the FCRA.

13. The Defendant, ONE TOUCH DIRECT, LLC, is a limited liability company with a principal place of business located at 9314 E Broadway Ave, Tampa, FL 33619, in Hillsborough County, Florida.

14. At all times material herein, Defendant regularly conducted, and continues to conduct, business throughout Hillsborough County, Florida, as a provider of contact center solutions employing fifteen (15) or more employees.

15. At all times material herein, Defendant met, and continues to meet, the definitions of "employer" under all applicable federal and state

statutes including, but not limited to, the ADEA, Title VII, and the FCRA.

16. Accordingly, Defendant is liable under the ADEA, Title VII, and the FCRA for the unlawful discrimination and retaliation to which it subjected Plaintiff as more fully alleged herein.

**ADMINISTRATIVE PREREQUISITES**

17. Plaintiff has properly exhausted all administrative prerequisites prior to filing the instant lawsuit.

18. On November 17, 2025, Plaintiff timely dual filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR") against Defendant alleging, among other things, discrimination based on age and sex and retaliation (EEOC Charge No. 511-2026-00560).

19. On August 1, 2026, the EEOC issued Plaintiff a Determination and Notice of Rights in reference to her Charge of Discrimination against Defendant.

20. This action is being filed within ninety (90) days of Plaintiff's receipt of the Notice of Right to Sue from the EEOC.

21. More than one hundred eighty (180) days have elapsed since the filing of Plaintiff's Charge of Discrimination and the FCHR has not

conciliated or determined whether there is reasonable cause. Therefore, Plaintiff is entitled to bring her FCRA claims in the instant civil action against Defendant and jurisdiction is proper in this Court. See §§ 760.11(4)(a) and 760.11(8), Florida Statutes.

22. All conditions precedent to bringing this action have been performed or have occurred.

## GENERAL ALLEGATIONS

23. Plaintiff Denise Self is a fifty-five-year-old female.

24. In or around October 2025, Plaintiff discovered a job posting on Indeed for a position with Defendant, a provider of contact center solutions operating out of Tampa, Florida. The posting advertised an annual pay range of $30,000 to $75,000, with uncapped bonuses, health care benefits, paid time off, and other incentives.

25. Plaintiff, who had relevant prior experience working as a trainer for a similar company and for Spectrum, a telecommunications provider, was drawn to the opportunity and applied for a supervisor position, for which she was well qualified.

26. Plaintiff applied for the supervisor/leadership position twice. On both occasions, she was told that no openings were available. Despite

these representations, Defendant continued to display advertisements and postings for supervisor positions, both on Indeed and visibly within the office itself.

27. Rather than being placed in the supervisory role for which she had applied, Plaintiff was offered and accepted a lower-level Sales Associate/Telephone Sales Representative ("TSR") position assigned to the Verizon Wireless Business program. She was given Employee ID 608475 and began her employment on October 6, 2025, reporting to Operations Manager Homrry Lewis.

28. On October 6, 2025, Plaintiff signed an Employee Acknowledgment and Agreement via DocuSign.

29. On October 10, 2025, just four days after Plaintiff began her employment, Defendant posted an internal job opening for a Call Center Sales Supervisor position. That position was filled on October 20, 2025, with an internal candidate, while Plaintiff, who was more experienced and qualified, was never given a meaningful opportunity to apply or compete for the role.

30. On October 9, 2025, Operations Manager Homrry Lewis addressed Plaintiff's new hire class and explained the program's goals,

commission structure, and methods for achieving benchmarks. That same day, Verizon Trainers Tyler Cintron and Luis Maga conducted more than forty-five minutes of additional instruction.

31. Following the initial classroom training period, Plaintiff and her fellow new hires entered a three-week "nesting" period, extended from the standard two weeks for the entire class. During this nesting period, Plaintiff was assigned two team lead mentors: Lionel Adebayo, age twenty-eight, and Bryce Chihanick, age twenty-three, the latter of whom was widely known among employees to be the owner's son.

32. From the outset of the nesting period, it became apparent that Lionel Adebayo and Bryce Chihanick were not providing equal training and support to all employees. Rather, they showed a clear and unmistakable preference for younger, physically attractive female employees, specifically women in their twenties.

33. Lionel Adebayo and Bryce Chihanick would sit beside these younger women, coach them directly, and in some instances even complete sales transactions on their behalf, thereby generating commissions for those employees while depriving Plaintiff and other older workers of the same opportunity.

34. When Plaintiff and other older employees sought assistance, Lionel Adebayo and Bryce Chihanick would walk away within seconds, dismissing their needs entirely. Bryce Chihanick, at one point, told Plaintiff to simply "figure it out myself." When Verizon Trainer Tyler Cintron was approached by Plaintiff with her concerns, he told her he was "walking away from negativity" and refused to help her.

35. The body language of supervisors and mentors toward older workers was consistently dismissive, while their demeanor toward younger, more attractive female employees was notably attentive and, at times, flirtatious.

36. The discrimination extended beyond the provision of training. Prizes and incentives offered during the nesting period were awarded exclusively to younger female employees. The rules for incentive competitions were changed or manipulated at the last moment in ways that prevented Plaintiff from qualifying for or winning them.

37. This pattern of exclusion was consistent and deliberate, reflecting a workplace culture that valued youth and physical attractiveness over experience, skill, and performance. The retained female employees were young women in their twenties, while older female employees,

including Plaintiff, were systematically marginalized.

38. At no point during the nesting period was Plaintiff ever clearly informed of the specific performance benchmarks she was expected to meet. She was told only of general production goals and was never advised of the nesting-specific expectations she would be evaluated against. Plaintiff was also never instructed on how to resolve BGOC pending order issues, a failure that directly impacted her ability to generate revenue.

39. It was only after Plaintiff's termination that Sara, Defendant's Human Resources contact, explained production goals and metrics to the remaining employees for the very first time. This belated disclosure confirms that the performance expectations used to justify Plaintiff's termination were never properly communicated to her during her employment.

40. Throughout her employment, Plaintiff raised concerns about the discriminatory treatment she was experiencing. She complained to Sara in Human Resources, to Rhonda the secretary, to Timothy Hawco, the Site Director, to Mike (bearded management), to Mike (over the site directors), to Dutch the supervisor, and to co-worker Shenille Moyd, among others.

41. In response to these complaints, no investigation was conducted. Instead, Plaintiff was met with dismissal, hostility, and

retaliation. At their very first meeting, Mike (over the site directors) labeled Plaintiff "just a complainer," despite having no prior knowledge of her work performance or abilities, signaling that Plaintiff had already been pre-targeted for adverse treatment as a result of her complaints.

42. Timothy Hawco ignored Plaintiff's concerns entirely. Tyler Cintron told her he was "walking away from negativity" after she raised issues. Dutch, her supervisor, delayed a promised meeting with Plaintiff for an entire week, and when that meeting finally arrived, it was not held to address her concerns. Instead, Plaintiff was summoned to the office under the pretext of receiving help and was terminated.

43. On November 11, 2025, Plaintiff was escorted into an office by Dutch and a manager named Armani. Rather than receiving the assistance she had been promised, she was informed that her employment was being terminated. Armani falsely claimed that Plaintiff had received adequate help during the nesting period, a claim Plaintiff disputes.

44. Plaintiff requested to speak with higher-level management to address the situation, but her request was denied. Following the termination meeting, Plaintiff was escorted out of the building by security and had her desk cleared in front of her colleagues, an experience she described as deeply

humiliating. She was fifty-five years old at the time of her termination and was the oldest employee in her group. She had been employed by Defendant for approximately five weeks.

45. Defendant's stated reason for Plaintiff's termination was her alleged failure to meet objective performance benchmarks, specifically that she averaged only $11.52 in revenue per hour during the nesting period against a required benchmark of $65.00 per hour.

46. This justification is pretextual for several reasons. First, Plaintiff was never clearly informed of the specific nesting metrics against which she would be evaluated. Second, the low revenue figures attributed to Plaintiff were directly caused by the discriminatory and inequitable training provided by Lionel Adebayo and Bryce Chihanick, who actively coached younger female employees while abandoning older workers like Plaintiff, and who improperly took credit for sales that Plaintiff had generated, depriving her of commissions and artificially suppressing her performance numbers. Third, Plaintiff was in production for only one day before her termination, making any meaningful performance evaluation all but impossible.

47. Defendant has also claimed that Plaintiff received six coaching

sessions during the nesting period and failed to improve despite this support. This claim is false. Plaintiff received, at most, one coaching conversation. She was never asked to sign any coaching records and was never made aware of the alleged sessions. When Plaintiff later demanded timestamps and documentation to verify these claimed meetings, Sara from Human Resources was unable to produce any.

48. Coaching records compiled by Lionel Adebayo and Bryce Chihanick appear to have been fabricated and entered into Defendant's system without Plaintiff's knowledge or signature. These records were not forwarded by Timothy Hawco to Sarah Otto, the Employee Relations Director, until November 12, 2025, the day after Plaintiff's termination, in an email with the subject line “TL Back up for the backup,” strongly suggesting that the coaching documentation was assembled after the fact to manufacture a paper trail to justify a predetermined termination decision.

49. The discriminatory and retaliatory nature of Defendant's conduct is further evidenced by the treatment of Plaintiff's co-worker, Shenille Moyd, age thirty-eight, who had made similar complaints about discriminatory treatment during her employment. Ms. Moyd was terminated on November 14, 2025, just three days after Plaintiff, in what

appears to be a continuation of Defendant's pattern of targeting older workers and retaliating against those who speak out.

50. After Plaintiff's termination, her daughter, age eighteen, was approached about a position at Defendant and directed to a different site. During that interaction, an interviewer allegedly told Plaintiff's daughter that her mother was “mean,” a statement reflecting Defendant's retaliatory intent toward Plaintiff and her family.

51. During the approximately five weeks Plaintiff was employed, Defendant changed the commission pay structure no fewer than three times, with each successive revision resulting in a significant reduction in earning potential for employees. Plaintiff was required to sign a new commission program agreement on each occasion, ultimately signing three such agreements. This repeated restructuring dramatically reduced the earning potential that had originally been advertised to Plaintiff and that had induced her to leave her prior position.

52. Plaintiff observed that there were very few older adults on the production floor at Defendant's Tampa facility. The workforce was dominated by young employees, and Defendant's own job posting language, advertising for candidates with “a vibrant personality coupled with high

energy and enthusiasm," reflects an institutional preference for younger workers embedded in Defendant's recruiting and hiring practices.

53. Of the eleven agents who began employment on October 6, 2025, ten were female, yet it was the older female employees who were disproportionately pushed out, while younger women in their twenties were retained and favored. This disparity reflects a deliberate pattern of age- and sex-based discrimination that permeated Defendant's management and training practices.

54. Defendant terminated Plaintiff on November 11, 2025, just days before Thanksgiving, at a time when Defendant was aware of Plaintiff's financial difficulties. The timing of her termination, occurring immediately before a major holiday when finding new employment is particularly difficult, compounded the harm Plaintiff suffered.

55. Plaintiff was earning a base wage of approximately $15.00 per hour. In addition to lost wages, Plaintiff is owed approximately six hours of unpaid overtime, approximately two weeks of unpaid regular wages, unpaid weekend pay, and unpaid commissions and bonuses, including bonuses she would have earned had Lionel Adebayo and Bryce Chihanick not improperly taken credit for sales she generated. Following her

termination, Plaintiff's Pay Active account was deactivated, preventing her from accessing wages she had already earned, and a commission check she was owed was allegedly lost or stolen in transit and never received by her.

56. Defendant's own Equal Employment Opportunity policy explicitly prohibits discrimination based on age, sex, gender identity, and other protected characteristics, and extends this prohibition to all aspects of employment, including termination, compensation, training, and the terms and conditions of employment. Defendant's policy further states that violations will result in disciplinary action up to and including immediate termination. The conduct described herein is a violation of federal and state law and of Defendant's own stated policies, demonstrating that the discriminatory and retaliatory conduct engaged in by Defendant's supervisors and management was knowing and willful.

57. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer significant damages. She has been unable to find new employment since her termination, lost her apartment and incurred additional fees, had her bank accounts overdrawn, been unable to pay her bills, and been unable to provide adequate food and medical care for her children. Plaintiff has also suffered profound mental

and emotional distress, having been blindsided by her termination and publicly humiliated in front of her coworkers.

**COUNT I**
**VIOLATION OF THE**
**AGE DISCRIMINATION IN EMPLOYMENT ACT**
**Age Discrimination**
**29 U.S.C. § 621 et seq.**

58. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 57 as though fully set forth herein.

59. Plaintiff was fifty-five years old at all times material hereto and is therefore a member of a protected class under the ADEA, which protects individuals who are forty years of age or older.

60. At all times material, Defendant was an employer within the meaning of the ADEA.

61. At all times material, Plaintiff was qualified for her position as a Sales Associate/Telephone Sales Representative and performed the essential functions of her job.

62. During her employment, Plaintiff was subjected to different terms and conditions of employment because of her age, including being denied equal training, mentorship, coaching, and incentives that were provided to substantially younger employees.

63. Defendant treated similarly situated, substantially younger employees more favorably than Plaintiff. Team leads Lionel Adebayo and Bryce Chihanick coached younger employees directly, completed sales on their behalf, and awarded them prizes and incentives, while ignoring and dismissing older employees such as Plaintiff.

64. On November 11, 2025, Defendant terminated Plaintiff's employment. Plaintiff was the oldest employee in her group, and substantially younger employees were retained.

65. Plaintiff's age was the determining factor in Defendant's decision to subject Plaintiff to different terms and conditions of employment and to terminate her employment.

66. Defendant's stated reason for Plaintiff's termination, her alleged failure to meet a $65.00 revenue-per-hour benchmark, was false, pretextual, insufficient, and not the real reason for its actions. The benchmark was never properly communicated to Plaintiff, her below-benchmark numbers were the direct product of the discriminatory training she received, and the coaching records offered to justify her termination were fabricated after the fact.

67. Defendant's conduct constituted intentional discrimination

against Plaintiff because of her age in violation of the ADEA, and was willful.

68. As a direct and proximate result of Defendant's unlawful age discrimination, Plaintiff suffered lost wages, lost benefits, lost earning capacity, unpaid wages and commissions, emotional distress, humiliation, mental anguish, and other compensatory damages.

WHEREFORE, Plaintiff demands judgment against Defendant for back pay, front pay or reinstatement, lost wages and commissions, liquidated damages for Defendant's willful violation, prejudgment interest, post-judgment interest, taxable costs, reasonable attorneys' fees as permitted by law, and such other relief as the Court deems just and proper.

## COUNT II
## VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT
## Retaliation
## 29 U.S.C. § 621 et seq.

69. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 57 as though fully set forth herein.

70. At all times material, Defendant was an employer within the meaning of the ADEA.

71. Plaintiff engaged in protected activity under the ADEA when she opposed and complained of age-based discriminatory treatment to

Defendant's management and Human Resources personnel, including Sara in Human Resources, Timothy Hawco, Dutch, and members of upper management.

72. Defendant knew of Plaintiff's protected activity.

73. After Plaintiff engaged in protected activity, Defendant subjected Plaintiff to materially adverse actions, including labeling her “just a complainer,” refusing to assist her with her work, delaying a promised meeting, and terminating her employment on November 11, 2025.

74. There is a causal connection between Plaintiff's protected activity and Defendant's materially adverse actions, supported by, among other things, the close temporal proximity between Plaintiff's complaints and her termination and the fabrication of pretextual coaching records assembled the day after her termination.

75. Defendant's stated reasons for its actions were false, pretextual, insufficient, and not the real reasons for its actions.

76. Defendant retaliated against Plaintiff because she opposed conduct made unlawful by the ADEA, and its conduct was willful.

77. As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff suffered lost wages, lost benefits, lost earning capacity,

unpaid wages and commissions, emotional distress, humiliation, mental anguish, and other compensatory damages.

WHEREFORE, Plaintiff demands judgment against Defendant for back pay, front pay or reinstatement, lost wages and commissions, liquidated damages for Defendant's willful violation, prejudgment interest, post-judgment interest, taxable costs, reasonable attorneys' fees as permitted by law, and such other relief as the Court deems just and proper.

**COUNT III**
**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT**
**Sex/Gender Discrimination**
**42 U.S.C. § 2000e et seq.**

78. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 57 as though fully set forth herein.

79. Plaintiff is a female and, therefore, a member of a protected class under Title VII.

80. At all times material, Defendant employed Plaintiff and was an "employer" within the meaning of Title VII, 42 U.S.C. § 2000e(b).

81. At all times material, Plaintiff was qualified for her position and performed the essential functions of her job.

82. During her employment, Plaintiff was subjected to different

terms and conditions of employment because of her sex. Defendant's team leads, Lionel Adebayo and Bryce Chihanick, systematically favored younger, physically attractive female employees by coaching them directly, completing sales on their behalf, and awarding them prizes and incentives, while ignoring and dismissing Plaintiff and other female employees who were not younger or considered physically attractive.

83. Retention decisions at Defendant were driven not by objective performance but by physical appearance and attractiveness, constituting unlawful discrimination on the basis of sex.

84. On November 11, 2025, Defendant terminated Plaintiff's employment while retaining younger female employees who were favored on the basis of their appearance.

85. Plaintiff's sex was a motivating factor in Defendant's decision to subject Plaintiff to different terms and conditions of employment and to terminate her employment.

86. Defendant's stated reasons for Plaintiff's termination were false, pretextual, insufficient, selectively enforced, and not the real reasons for its actions.

87. Defendant, through its supervisors and managers, knew or

should have known of the sex discrimination and failed to take prompt and effective remedial action.

88. As a direct and proximate result of Defendant's unlawful sex discrimination, Plaintiff suffered lost wages, lost benefits, lost earning capacity, unpaid wages and commissions, emotional distress, humiliation, mental anguish, and other compensatory damages.

WHEREFORE, Plaintiff demands judgment against Defendant for back pay, front pay or reinstatement, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, taxable costs, reasonable attorneys' fees as permitted by law, and such other relief as the Court deems just and proper.

**COUNT IV**
**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT**
**Retaliation**
**42 U.S.C. § 2000e et seq.**

89. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 57 as though fully set forth herein.

90. At all times material, Defendant employed Plaintiff and was an "employer" within the meaning of Title VII.

91. Plaintiff engaged in protected activity under Title VII when she

opposed and complained of sex-based discriminatory treatment to Defendant's management and Human Resources personnel, including Sara in Human Resources, Timothy Hawco, Dutch, and members of upper management.

92. Plaintiff had a good-faith, objectively reasonable belief that she was opposing conduct made unlawful by Title VII.

93. Defendant was aware of Plaintiff's protected activity.

94. After Plaintiff engaged in protected activity, Defendant subjected Plaintiff to materially adverse actions, including labeling her "just a complainer," refusing to assist her with her work, delaying a promised meeting, and terminating her employment on November 11, 2025.

95. There is a causal connection between Plaintiff's protected activity and Defendant's materially adverse actions, supported by, among other things, the close temporal proximity between Plaintiff's complaints and her termination, Defendant's failure to investigate her complaints, and the fabrication of pretextual coaching records assembled the day after her termination.

96. Defendant's stated reasons for its actions were false, pretextual, insufficient, and not the real reasons for its actions.

97. Defendant retaliated against Plaintiff because she opposed conduct made unlawful by Title VII.

98. As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff suffered lost wages, lost benefits, lost earning capacity, unpaid wages and commissions, emotional distress, humiliation, mental anguish, and other compensatory damages.

WHEREFORE, Plaintiff demands judgment against Defendant for back pay, front pay or reinstatement, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, taxable costs, reasonable attorneys' fees as permitted by law, and such other relief as the Court deems just and proper.

## COUNT V
## VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT
## Age Discrimination
## Fla. Stat. §§ 760.01-760.11

99. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 57 as though fully set forth herein.

100. Plaintiff was fifty-five years old at all times material hereto and is therefore a member of a protected class under the Florida Civil Rights Act, which prohibits discrimination in employment because of age.

101. At all times material, Defendant employed Plaintiff and was an "employer" within the meaning of the FCRA.

102. At all times material, Plaintiff was qualified for her position and performed the essential functions of her job.

103. During her employment, Plaintiff was subjected to different terms and conditions of employment because of her age, including being denied equal training, mentorship, coaching, and incentives that were provided to substantially younger employees, and Defendant treated similarly situated, substantially younger employees more favorably than Plaintiff.

104. On November 11, 2025, Defendant terminated Plaintiff's employment while retaining substantially younger employees.

105. Plaintiff's age was a determining factor in Defendant's decision to subject Plaintiff to different terms and conditions of employment and to terminate her employment.

106. Defendant's stated reasons for Plaintiff's termination were false, pretextual, insufficient, and not the real reasons for its actions.

107. All conditions precedent to bringing this action under the FCRA have been satisfied, including the timely filing of an administrative

charge and the receipt of all required notices.

108. As a direct and proximate result of Defendant's unlawful age discrimination, Plaintiff suffered lost wages, lost benefits, lost earning capacity, unpaid wages and commissions, emotional distress, humiliation, mental anguish, and other compensatory damages.

WHEREFORE, Plaintiff demands judgment against Defendant for back pay, front pay or reinstatement, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, taxable costs, reasonable attorneys' fees as permitted by law, and such other relief as the Court deems just and proper.

**COUNT VI**
**VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT**
**Sex/Gender Discrimination**
**Fla. Stat. §§ 760.01-760.11**

109. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 57 as though fully set forth herein.

110. Plaintiff is a female and, therefore, a member of a protected class under the Florida Civil Rights Act.

111. At all times material, Defendant employed Plaintiff and was an "employer" within the meaning of the FCRA.

112. At all times material, Plaintiff was qualified for her position and performed the essential functions of her job.

113. During her employment, Plaintiff was subjected to different terms and conditions of employment because of her sex. Defendant's team leads, Lionel Adebayo and Bryce Chihanick, systematically favored younger, physically attractive female employees by coaching them directly, completing sales on their behalf, and awarding them prizes and incentives, while ignoring and dismissing Plaintiff, and retention decisions were driven by physical appearance and attractiveness rather than objective performance.

114. On November 11, 2025, Defendant terminated Plaintiff's employment while retaining younger female employees who were favored on the basis of their appearance.

115. Plaintiff's sex was a motivating factor in Defendant's decision to subject Plaintiff to different terms and conditions of employment and to terminate her employment.

116. Defendant's stated reasons for Plaintiff's termination were false, pretextual, insufficient, selectively enforced, and not the real reasons for its actions.

117. All conditions precedent to bringing this action under the FCRA have been satisfied, including the timely filing of an administrative charge and the receipt of all required notices.

118. As a direct and proximate result of Defendant's unlawful sex discrimination, Plaintiff suffered lost wages, lost benefits, lost earning capacity, unpaid wages and commissions, emotional distress, humiliation, mental anguish, and other compensatory damages.

WHEREFORE, Plaintiff demands judgment against Defendant for back pay, front pay or reinstatement, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, taxable costs, reasonable attorneys' fees as permitted by law, and such other relief as the Court deems just and proper.

## COUNT VII
## VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT
## Retaliation
## Fla. Stat. §§ 760.01-760.11

119. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 57 as though fully set forth herein.

120. At all times material, Defendant employed Plaintiff and was an "employer" within the meaning of the FCRA.

121. Plaintiff engaged in protected activity under the FCRA when she opposed and complained of age- and sex-based discriminatory treatment to Defendant's management and Human Resources personnel, including Sara in Human Resources, Timothy Hawco, Dutch, and members of upper management.

122. Defendant was aware of Plaintiff's protected activity.

123. After Plaintiff engaged in protected activity, Defendant subjected Plaintiff to materially adverse actions, including labeling her “just a complainer,” refusing to assist her with her work, delaying a promised meeting, and terminating her employment on November 11, 2025.

124. There is a causal connection between Plaintiff's protected activity and Defendant's materially adverse actions, supported by, among other things, the close temporal proximity between Plaintiff's complaints and her termination, Defendant's failure to investigate her complaints, and the fabrication of pretextual coaching records assembled the day after her termination.

125. Defendant's stated reasons for its actions were false, pretextual, insufficient, and not the real reasons for its actions.

126. Defendant retaliated against Plaintiff because she engaged in

activity protected by the FCRA.

127. All conditions precedent to bringing this action under the FCRA have been satisfied, including the timely filing of an administrative charge and the receipt of all required notices.

128. As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff suffered lost wages, lost benefits, lost earning capacity, unpaid wages and commissions, emotional distress, humiliation, mental anguish, and other compensatory damages.

WHEREFORE, Plaintiff demands judgment against Defendant for back pay, front pay or reinstatement, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, taxable costs, reasonable attorneys' fees as permitted by law, and such other relief as the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff respectfully requests a trial by jury.

Date this 25th day of August, 2026.

*/s/ Jason W. Imler, Esq*
Jason W. Imler
Florida Bar No. 1004422
Alberto "Tito" Gonzalez
Florida Bar No. 1037033

**Imler Law**
23110 State Road 54, Unit 407
Lutz, Florida 33549
(P): 813-553-7709
Jason@ImlerLaw.com
Tito@ImlerLaw.com
Ashley@ImlerLaw.com
Tiffany@ImlerLaw.com
Attorneys for Plaintiff